UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMERICAN FAMILY INSURANCE
COMPANY,

                    Plaintiff,

        v.

BRIANNA GARZA, et al.,

                    Defendants.

C21-1210 TSZ

ORDER

THIS MATTER comes before the Court on Defendants' Motion to Dismiss, docket no. 19.  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

On March 27, 2018, Defendants Brianna Garza and her husband, Mario Garza, were involved a motor vehicle collision with Defendant Matthew Perry.  Compl. at ¶ 10 (docket no. 1).  In April 2019, the Garzas filed a personal injury action against Perry in Snohomish County Superior Court.  *Id.* at ¶ 13.  Plaintiff American Family Insurance Company ("AmFam") provided Perry's automobile insurance, and Perry tendered his defense to AmFam under the policy.  *Id.* at ¶¶ 11 & 14.  Throughout the course of his

1  litigation with the Garzas, Perry's counsel advised AmFam that the value of the Garzas'

2  claim was less than the policy's $250,000 liability limit.  *Id.* at ¶ 16.  The Garzas

3  demanded more than the policy's liability limit.  *Id.* at ¶¶ 17–21.

4        On December 23, 2020, the Garzas and Perry (collectively, the "Defendants")

5  executed a settlement agreement, wherein Perry agreed to assign his rights against

6  AmFam to the Garzas in exchange for a covenant not to execute on the stipulated

7  judgment against Perry.  *Id.* at ¶ 23.  The agreement contained a $2.5 million stipulated

8  judgment.  *Id.* at ¶ 1.  Paragraph 20 of the agreement provided that Defendants would

9  release each other from the terms of the agreement if AmFam agreed in writing to waive

10  its $250,000 liability limit within thirty (30) days.  *Id.* at ¶ 25.  AmFam contends that on

11  December 31, 2020, it agreed in writing to waive limits and fully indemnify Perry for any

12  excess award.  *Id.* at ¶ 26.  AmFam alleges that on January 5, 2021, Defendants breached

13  the terms of the settlement agreement by refusing to release each other from the

14  agreement.  *Id.* at ¶ 28.

15        Pursuant to the terms of the settlement agreement, a reasonableness hearing was

16  conducted in Snohomish County Superior Court in support of the stipulated judgment for

17  $2.5 million.  *Id.* at ¶ 34.  The trial court permitted AmFam to intervene to enforce

18  paragraph 20 of the agreement and participate in the reasonableness hearing.  *Id.* at ¶ 35.

19  The trial court denied AmFam's motion to enforce paragraph 20 of the settlement

20  agreement and determined that the $2.5 million stipulated judgment was reasonable.  *Id.*

21  at ¶¶ 36 & 39.

22

23

ORDER - 2

1    On September 3, 2021, AmFam brought this action under the Declaratory

2  Judgment Act ("DJA"), 28 U.S.C. § 2201(a), seeking declarations that:  (i) Perry

3  invalidated his coverage by violating the cooperation condition in his policy; (ii)

4  Defendants collectively breached paragraph 20 of the settlement agreement and AmFam

5  is entitled to specific performance; (iii) AmFam has not acted in bad faith; and (iv) even

6  if Perry did not breach his policy, AmFam has no obligation for payment of the stipulated

7  judgment in excess of the $250,000 policy limit.  Compl. at ¶¶ 44–61.

8    On September 7, 2021, the Garzas, through Perry's assignment of rights, filed a

9  complaint against AmFam in Snohomish County Superior Court, alleging that AmFam

10  acted in bad faith.  *Garza et al. v. Am. Fam. Ins. Co.*, No. 21-cv-1234 (docket no. 1-2).

11  On September 9, 2021, AmFam removed that action to this Court.  *Garza et al.*, No. 21-

12  cv-1234 (docket no. 1).  On October 20, 2021, the Garzas moved this Court to remand

13  that action to state court.  *Garza et al.*, No. 21-cv-1234 (docket no. 14).

14    On November 10, 2021, in the related action pending in state court, AmFam filed

15  a notice of appeal in the Washington Court of Appeals, challenging:  (i) the trial court

16  judge's refusal to recuse himself from the state proceedings; (ii) whether AmFam should

17  have been granted summary judgment under paragraph 20 of the settlement agreement;

18  and (iii) several errors arising during the reasonableness hearing before the state trial

19  court.  Ex. 5 to Leonard Decl. (docket no. 20-5).  On November 19, 2021, this Court

20  ordered that the removed action be remanded to Snohomish County Superior Court.

21  *Garza et al.*, No. 21-cv-1234 (docket no. 22).  Defendants now move to dismiss

22

23

ORDER - 3

1   AmFam's declaratory action under the abstention doctrine established in *Brillhart v.*

2   *Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

3   **Discussion**

4        1.      **Abstention**

5        Pursuant to the DJA, the Court "may declare the rights and other legal relations of

6   any interested party seeking such declaration, whether or not further relief is or could be

7   sought." 28 U.S.C. § 2201(a). To be justiciable under the DJA, a dispute must (i) be

8   "definite and concrete, touching the legal relations of parties having adverse legal

9   interests," (ii) be "real and substantial," seeking "specific relief through a decree of

10  conclusive character, as distinguished from an opinion advising what the law would be

11  upon a hypothetical state of facts," and (iii) fall within the subject matter jurisdiction of

12  the Court. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting

13  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937)); *Skelly*

14  *Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950). Even when a suit

15  satisfies the "case or controversy" and other jurisdictional prerequisites, a district court

16  may exercise its discretion to decline to entertain an action under the DJA, so long as its

17  discretion is appropriately guided by the non-exhaustive factors set forth in *Brillhart*, and

18  its progeny. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Gov't Emps. Ins.*

19  *Co. v. Dizol*, 133 F.3d 1220, 1223–26 (9th Cir. 1998).

20       The *Brillhart* factors to be considered by the Court include: (i) avoiding needless

21  determination of state law issues; (ii) discouraging litigants from filing declaratory

22  judgment actions as a means of forum shopping; and (iii) avoiding duplicative litigation.

23

*Dizol*, 133 F.3d at 1225; *see also id.* at 1225 n.5 (enumerating other considerations

suggested by the Ninth Circuit).  *Brillhart* contemplates that the ordinarily applied

principle of requiring federal courts to adjudicate claims within their jurisdiction should

yield to "considerations of practicality and wise judicial administration."  *Wilton*, 515

U.S. at 288.  If declining to entertain an action is appropriate under *Brillhart*, a district

court may, on motion or sua sponte, enter either a stay or a dismissal.  *See Wilton*, 515

U.S. at 290 (affirming a stay of a declaratory judgment action); *Brillhart*, 316 U.S. at 498

(remanding for the district court to "exercise its discretion in passing upon the

petitioner's motion to dismiss this suit"); *see also Dizol*, 133 F.3d at 1224–27

(concluding that a district court may, but is not required to, sua sponte address whether

DJA jurisdiction should be declined).

   The parties agree that the Court has jurisdiction to hear this case under the DJA.

Defendants argue that the Court should exercise its discretion under *Brillhart* and decline

to entertain AmFam's declaratory action.  The question before the Court is whether

*Brillhart* warrants a stay or a dismissal of this action.[1]

### 2.   The *Brillhart* Factors Warrant Dismissal

   First, the Court considers issues of judicial economy and the needless

determination of state law issues.  AmFam acknowledges that a successful appeal in state

court might moot the declaratory action.  Resp. at 14 (docket no. 21).  For example,

---

[1] Defendants also argue that the doctrine established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) requires dismissal of this action.  The Court does not address this question because the non-exhaustive *Brillhart* factors weigh in favor of dismissal.

1    AmFam explains that if the state appellate court reverses the trial judge's ruling

2    concerning paragraph 20 of the settlement agreement, Defendants' settlement agreement

3    will be set aside and the underlying personal injury claims will be set for trial in state

4    court.  AmFam argues that the declaratory action in federal court is the only forum in

5    which "forward progress" can be made on the bad faith issue given the anticipated length

6    of the appeals process.  This argument is unconvincing.

7        Further, the Court must avoid duplicative litigation.  Although AmFam proposes

8    to move this Court for leave to amend its complaint, *see* Resp. at 6 n.3, the Court cannot

9    ignore the operable complaint, docket no. 1, seeking a declaration concerning paragraph

10   20 of Defendants' settlement agreement.  Whether AmFam is entitled to specific

11   performance of paragraph 20 is an issue currently pending before the Washington Court

12   of Appeals.  Even amending the complaint to remove AmFam's claim for specific

13   performance would not make the declaratory action any less duplicative.  AmFam also

14   seeks a declaration that it has no obligation for payment of the stipulated judgment in

15   excess of the $250,000 policy limit.  Under Washington law, "the amount of a covenant

16   judgment is the presumptive measure of an insured's harm caused by an insurer's tortious

17   bad faith if the covenant judgment is reasonable . . . ."  *Besel v. Viking Ins. Co. of Wis.*,

18   146 Wn.2d 730, 738, 49 P.3d 887 (2002) (en banc).  Whether the state trial court

19   correctly concluded that the $2.5 million stipulated judgment is reasonable is another

20   issue now pending before the Washington Court of Appeals.

21       Finally, the *Brillhart* factors are non-exhaustive, and the Court also considers

22   whether the declaratory action will result in "entanglement between the federal and state

23

1 court systems" and whether the declaratory action "is being sought merely for the

2 purposes of procedural fencing or to obtain a 'res judicata' advantage." *Dizol*, 133 F.3d

3 at 1225 n.5.  At this time, entanglement with the state court system appears to be

4 unavoidable given the pending appeal and remanded bad faith claim.  The Court,

5 exercising its discretion, concludes that dismissal of the declaratory action is appropriate

6 under *Brillhart*.

7 **Conclusion**

8       For the foregoing reasons, the Court ORDERS:

9       (1)    Defendants' Motion to Dismiss, docket no. 19, is GRANTED, and this

10 action is DISMISSED without prejudice pursuant to *Brillhart v. Excess Ins. Co. of Am.*,

11 316 U.S. 491 (1942), and its progeny.

12       (2)    The Clerk is directed to send a copy of this Order to all counsel of record.

13       IT IS SO ORDERED.

14       Dated this 9th day of February, 2022.

15

16       Thomas S. Zilly
      United States District Judge

17

18

19

20

21

22

23